UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
FLATLOGIC EU,                                               :
                                                            :
                                       Petitioner,        :        REPORT AND
                                                            :        RECOMMENDATION
        -against-                                          :
                                                            :        No. 24-CV-3791-HG-JRC
                                                            :
LAVAMAP LLC,                                                :
                                                            :
                                       Respondent.        :
-------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

       On May 28, 2024, petitioner Flatlogic EU ("Flatlogic" or "petitioner") filed a petition ("Petition" or "Pet."), Dkt. 1, against respondent Lavamap LLC ("Lavamap" or "respondent") seeking confirmation of a foreign arbitration award entered by the Vilnius Court of Commercial Arbitration ("VCCA") of Lithuania in Flatlogic's favor and against Lavamap. *See* Arbitral Award entered on April 4, 2024 (the "Arbitral Award"), Dkt. 13-6.

       On August 1, 2024, after Lavamap failed to timely answer the Petition or otherwise appear in this action, the Clerk of Court entered a Certificate of Default against Lavamap. *See* Clerk's Entry of Default, Dkt. 12. On September 9, 2024, Flatlogic filed the instant motion for default judgment. *See* Mot. for Default J., Dkt. 13. Currently pending before this Court, on a referral from the Honorable Hector Gonzalez, is petitioner's motion for default judgment. *See id.*; Order Referring Mot. dated Dec. 19, 2024.

       For the reasons set forth below, this Court respectfully recommends granting petitioner's motion for default judgment and confirming the Arbitral Award.

**BACKGROUND**[1]

I. **The Parties' Agreement**

On January 17, 2020, Flatlogic and Lavamap entered into a software development agreement (the "Agreement") whereby Flatlogic agreed to develop software programs for Lavamap in accordance with the specifications set forth in the Agreement, as well as "user manuals, other documentation, and other ancillary materials." Pet. ¶ 5; *see* Daineka Decl. Ex. A ("Agreement"), Dkt. 13-5. In exchange for Flatlogic's services, "Lavamap agreed to pay Flatlogic $50/[hour] if one developer was involved; $43/[hour] if two or more developers were involved; and $35/[hour] for a designer." Pet. ¶ 6; Agreement ¶ 3.1. Invoices for the services performed were to be sent monthly, with payment to Flatlogic due within 15 days of the receipt of an invoice. Pet. ¶ 6; Agreement ¶¶ 3.1, 3.4. Lavamap made a partial payment for the services Flatlogic performed under the Agreement; however, Flatlogic asserts that Lavamap failed to pay a total balance of $76,341.16.[2] Pet. ¶¶ 7, 20.

Pursuant to paragraph 12 of the Agreement, the parties agreed to arbitrate any disputes arising under or related to the Agreement before the VCCA.[3] *See* Pet. ¶ 8; Agreement ¶ 12 ("Any dispute, arising out of or relating to this Agreement, shall be finally settled by arbitration in the Vilnius Court of Commercial Arbitration in accordance with its Rules of Arbitration.").

---

[1] The facts set forth in this section, which are assumed true for purposes of this motion, are taken from the Petition (Dkt. 1). The Court has also considered the exhibits annexed to the Declaration of Filip Daineka in Support of the Motion for Default Judgment ("Daineka Decl.," Dkt. 13-4), including the Arbitral Award (Dkt. 13-6).

[2] Petitioner acknowledged that "Flatlogic's original demand of $80,580.11 contained a calculation error." Pet. ¶ 20 n.3.

[3] According to petitioner, the VCCA in Lithuania "is a dispute resolution institution similar to the American Arbitration Association or the London Court of International Arbitration." Pet. ¶ 10 n.1.

The Agreement also contained a provision requiring that, prior to commencing arbitration, the parties "agree to make a good-faith effort to resolve any disagreement arising out of, or in connection with, this Agreement through negotiation." Agreement ¶ 16; *see* Pet. ¶ 9. Consistent with the Agreement, Flatlogic attempted to resolve the outstanding balance "through multiple written communications sent to Lavamap via email and registered mail." Pet. ¶ 11.

## II. Arbitration Proceedings and the Arbitral Award

After failing to resolve the dispute, Flatlogic commenced arbitration against Lavamap in the VCCA on December 12, 2023. Pet. ¶¶ 10, 11; Daineka Decl. ¶ 7. Flatlogic requested: (1) the outstanding debt in the amount of $80,580.11[4]; (2) six percent annual procedural interest calculated on the awarded amount from the day the arbitral procedure started until the full execution of the arbitral award; (3) the amount of the arbitration fees paid by Flatlogic; and (4) the litigation expenses incurred by Flatlogic. Pet. ¶ 10; Daineka Decl. Ex. B ("Arbitral Award") ¶¶ 3, 17, Dkt. 13-6. Despite being served with notice of the arbitration, Lavamap failed to respond to Flatlogic's claim. Pet. ¶¶ 12–14. On January 26, 2024, the VCCA appointed Arbitrator Marius Grajauskas ("Arbitrator" or "Arbitral Tribunal") to adjudicate this matter. *See* Arbitral Award at 2–3; *see also id*. ¶ 23.

On February 13, 2024, the Arbitrator issued a procedural order inviting the parties to present their written explanations and all additional evidence by February 27, 2024. Pet. ¶ 15; Arbitral Award ¶ 26. The Arbitrator's procedural order was served on Lavamap; however, Lavamap failed to submit any response to Flatlogic's claim. *See* Pet. ¶ 16, Arbitral Award ¶¶ 27, 28. On March 5, 2024, the Arbitrator "conducted a written hearing." Pet. ¶ 17; Arbitral Award ¶ 32. The Arbitrator concluded "that Respondent ha[d] deliberately opted not to

---

[4] As noted above, Flatlogic's initial demand contained a "calculation error." *See* Pet. ¶ 20 n.3.

3

participate in the arbitration proceedings, failed to present to the Arbitral Tribunal [its] response to the claim and failed to present additional evidence . . . ." Arbitral Award ¶ 33.

The Arbitrator proceeded to analyze Flatlogic's claim on the merits. *See* Pet. ¶ 19, Arbitral Award ¶ 34. The Arbitrator found that: (1) the parties had entered into an agreement; (2) Flatlogic performed services in accordance with that agreement; (3) Lavamap acknowledged the debt owed to Flatlogic; (4) Lavamap made partial payment of the amount due; and (5) Lavamap owed Flatlogic a balance of $76,341.16. Arbitral Award ¶¶ 36, 38, 39, 40, 53; *see* Pet. ¶ 20. The Arbitrator entered an arbitral award in Flatlogic's favor on April 4, 2024. *See* Pet. ¶ 21; *see generally* Arbitral Award, Dkt. 13-6. Pursuant to the Arbitral Award, Lavamap was ordered to pay Flatlogic an unpaid balance of $76,180.11,[5] procedural interest in the amount of six percent accruing from the date of the initiation of arbitration (December 12, 2023) until the Arbitral Award was fully executed, and legal fees and arbitration costs in the amount of EUR 10.630.16 (ten thousand six hundred thirty euros and sixteen euro cents).[6] *See* Pet. ¶ 21; Arbitral Award ¶ 72.

### III. Petition to Confirm the Arbitral Award

On May 28, 2024, Flatlogic filed the instant Petition against Lavamap seeking confirmation of the Arbitral Award. *See* Pet., Dkt. 1. On June 12, 2024, Flatlogic effectuated

---

[5] The tribunal determined that Flatlogic had opted not to seek reimbursement of $161.05 for services reflected in invoice "ADV No. 000452," and, therefore, deducted this amount from the award (*i.e.*, $76,341.16 - $161.05 = $76,180.11). *See* Arbitral Award ¶¶ 54–57; Pet. ¶ 21 n.4.

[6] The Arbitrator found that petitioner's claim had been "satisfied partially" and reduced the award of fees and costs "in proportion to the amount of the claims satisfied and rejected." Arbitral Award ¶ 68. Specifically, Article 7(4) of the applicable Arbitration Rules provides that "[i]n case of satisfying the claim in part, the arbitration fees shall be distributed between the parties in proportion to the amount of the claims satisfied and rejected." *See* Arbitral Award ¶ 67. Because the Arbitrator reduced petitioner's claim from $80,580.11 to $76,180.11 (*see id.* ¶¶ 58–59), the Arbitrator also reduced petitioner's award of fees and costs from EUR 11.244,22 to EUR 10,630.16 pursuant to Article 7(4). *See id.* ¶ 68.

4

service of the Summons and the Petition upon Lavamap by serving Jen Benzicken, a registered agent authorized to accept service under Rule 4 of the Federal Rules of Civil Procedure.  *See* Dkt. 7.  Lavamap failed to answer or otherwise respond to the Petition.  *See* Dkt. 9.  On August 1, 2024, the Clerk of Court entered Lavamap's default, and on September 9, 2024, Flatlogic moved for default judgment.  *See* Clerk's Entry of Default, Dkt. 12; Mot. for Default J., Dkt. 13.  On December 19, 2024, Judge Gonzalez referred the instant motion for default judgment to the undersigned for a Report and Recommendation.  *See* Order Referring Mot. dated Dec. 19, 2024.

## LEGAL STANDARDS

### I.  Entry of Default Judgement

Rule 55 of the Federal Rules of Civil Procedure "provides a 'two-step process' for the entry of judgment against a party who fails to defend:  first, the entry of a default, and second, the entry of a default judgment."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).  The Clerk of Court enters the default "when a defendant, or respondent, 'has failed to plead or otherwise defend' in an action."[7]  *Qing Yang Seafood Imp. (Shanghai) Co. v. JZ Swimming Pigs, Inc.*, No. 21-CV-3587, 2022 WL 2467540, at *2 (E.D.N.Y. Apr. 15, 2022) (quoting Fed. R. Civ. P. 55(a)), *report and recommendation adopted*, Order dated May 10, 2022.  Thereafter the district court may, upon application, enter a default judgment.[8]  *See id.*; Fed. R.

---

[7] Here, Lavamap failed to appear or otherwise respond to the Petition despite proper service of the Summons and the Petition.  *See* Dkts. 7, 9.

[8] It is unclear whether petitioner sought default judgment under Rule 55(b)(1) or (b)(2) of the Federal Rules of Civil Procedure.  *Compare* Notice of Mot., Dkt. 13 ("pursuant to Federal Rule of Civil Procedure . . . 55(b)(1)"), *and* Pet.'s Mem. of Law in Supp. of Mot. for Default J. ("Pet.'s Mem.") at 2, Dkt. 13-2 ("pursuant to Fed. R. Civ. P. 55(b)(1)"), *with* Aff. of Ely Goldin at ¶ 1, Dkt. 13-3 (counsel for petitioner affirming that petitioner filed the motion pursuant to Rule 55(b)(2)), *and* Notice of Mot., Dkt. 13 ("Petitioner . . . will move before the Honorable Hector Gonzalez, United States District Judge . . . for entry of an Order granting default judgment . . . .").  "Rule 55(b)(1) permits entry of judgment by the clerk of court, without involvement of a judge, in circumstances where 'the plaintiff's claim is for a sum certain and the defendant has

5

Civ. P. 55(b)(2).  Whether to grant a motion for default judgment is within the discretion of the court.  *See Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 54 (E.D.N.Y. 2022).  When evaluating a motion for default judgment, "a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [the moving party's] favor."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  The court then evaluates whether the "allegations establish [the defaulting party's] liability as a matter of law."  *Id.*  However, "a pleading's legal conclusions are not assumed to be true . . . ."  *Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086, 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016), *report and recommendation adopted*, 2016 WL 2758272 (E.D.N.Y. May 12, 2016).

"This is especially true in the context of a default motion seeking to enforce an arbitral award."  *Qing Yang Seafood*, 2022 WL 2467540, at *3.  Specifically, the Second Circuit has cautioned that "default judgments in confirmation . . . proceedings are generally inappropriate" and that "Rule 55 does not operate well in the context of a motion to confirm or vacate an arbitration award."  *D.H. Blair & Co., v. Gottdiener,* 462 F.3d 95, 107, 109 (2d Cir. 2006).  Instead, "[b]ecause a record has already been developed during the course of the underlying arbitration proceeding, courts in our circuit generally treat the movant's application for default

---

failed to appear and is not an infant or incompetent person.'"  *Mickalis Pawn Shop,* 645 F.3d at 129 n.17 (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)); *see* Fed. R. Civ. P. 55(b)(1).  "Rule 55(b)(2) governs '[i]n all other cases.'"  *Mickalis Pawn Shop*, 645 F.3d at 129 n.17 (alteration in original) (quoting *Green*, 420 F.3d at 104); *see Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040, 2024 WL 1270816, at *2 (E.D.N.Y. Mar. 26, 2024) ("If a claim is for a sum certain or a sum that can be made certain by computation, the clerk can enter judgment. . . .  In all other cases, the party must apply to the court for a default judgment." (cleaned up) (citations omitted)).  Because petitioner applied to the Court, rather than the Clerk, for a default judgment, and because the Court must determine the appropriate method for converting a portion of the Arbitral Award to U.S. dollars, this Court construes petitioner's motion as a motion for default judgment pursuant to Rule 55(b)(2).

judgment like an 'unopposed motion for summary judgment' to confirm the arbitration award."[9] *Qing Yang Seafood*, 2022 WL 2467540, at *3 (quoting *Korean Trade Ins. Corp. v. Eat It Corp.*, No. 14-CV-3456, 2015 WL 1247053, at *3 (E.D.N.Y. Mar. 16, 2015)); *see also OOO FC Grand Cap. v. Int'l Pharm. Servs. Ltd.*, No. 16-CV-6156, 2017 WL 8813135, at *4 (E.D.N.Y. Dec. 15, 2017) ("Unlike typical civil actions governed by Fed. R. Civ. P. 55, petitions to confirm arbitration awards 'are motions in an ongoing proceeding rather than a complaint initiating a plenary action.'" (quoting *D.H. Blair*, 462 F.3d at 108)), *report and recommendation adopted*, 2018 WL 879027 (E.D.N.Y. Feb. 14, 2018).

To rule in favor of petitioner and to confirm the arbitration award, "the Court must . . . find that the record 'show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Korean Trade Ins.*, 2015 WL 1247053, at *3 (second alteration in original) (quoting *Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Unite Here!,* 2009 WL 704723, at *4); *see also Drip Cap., Inc. v. M/S. Goodwill Apparels*, 665 F. Supp. 3d 511, 519 (S.D.N.Y. 2023) ("Even if a petition to confirm [an arbitration award] is unopposed, a court must still ensure that judgment is proper as a matter of law under the undisputed facts."). "In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party." *Laundry, Dry*

---

[9] "[O]ther courts in this district have held that default judgment is appropriate, despite the Second Circuit's pronouncement in *D.H. Blair,* where the respondent failed to respond or otherwise appear at both the arbitration hearing *and* the subsequent confirmation proceeding." *Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Unite Here! v. Jung Sun Laundry Grp. Corp.*, No. 08-CV-2771, 2009 WL 704723, at *3 (E.D.N.Y. Mar. 16, 2009); *see also Trs. of the UNITE HERE Nat. Health Fund v. New Age Intimates, Inc.*, No. 07-CV-2892, 2008 WL 3833841, at *4 (E.D.N.Y. Aug. 14, 2008) (holding that, where the respondent defaulted in both the underlying arbitration and the confirmation proceeding, "the distinction between moving for default judgment and moving for summary judgment in confirmation of an arbitration proceeding is purely academic").

7

*Cleaning Workers & Allied Indus. Health Fund, Unite Here!*, 2009 WL 704723, at *4 (quoting *Sista v. CDC Ixis N.A., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).

## II. Enforcement of a Foreign Arbitration Award

The judicial confirmation of a foreign arbitration award is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, also referred to as the "New York Convention." *See* 9 U.S.C. §§ 201–08. "An arbitration agreement falls within the scope of the New York Convention if four requirements are met: '(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope.'" *Drip Cap., Inc.*, 665 F. Supp. 3d at 518 (quoting *Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 335 (S.D.N.Y. 2010)). "Under 9 U.S.C. § 207, a party may seek to confirm a foreign arbitral award under the New York Convention if the award (1) falls under the Convention[10]; (2) was issued within the past three years; and (3) does not fall under a relevant exception." *Qing Yang Seafood*, 2022 WL 2467540, at *3. "Article V of the [New York] Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica*, Inc., 403 F.3d 85, 90 (2d Cir. 2005). The seven defenses include the following:

> (1) incapacity of the parties; (2) improper notice or inability for the respondent to present a case; (3) the award does not comply with terms of the submission to arbitration or is otherwise beyond the scope of proceedings; (4) the composition of the arbitral authority was not in accordance with the parties or host country; (5) the "award has not yet become binding on the parties, or has been set aside" by another authority; (6) the subject matter of the dispute "is not capable of settlement by arbitration" under relevant law; and (7) "enforcement of the award

---

[10] The New York Convention provides as follows: "An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title [9 U.S.C. § 2], falls under the Convention." 9 U.S.C. § 202.

8

would be contrary to public policy."

*Qing Yang Seafood*, 2022 WL 2467540, at *3 (quoting New York Convention, art. V(1)–(2)). "The Second Circuit has held that confirmation under the New York Convention is a 'summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm.'" *Drip Cap., Inc.*, 665 F. Supp. 3d at 519 (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)); *see also Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) ("[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." (quoting *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 176 (2d Cir. 1984)). Thus, a "district court's role in reviewing a foreign arbitral award is strictly limited" and "extremely deferential." *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 19; *Korean Trade Ins.*, 2015 WL 1247053, at *4; *see also* 9 U.S.C. § 207 ("The court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." (emphasis added)); *OOO FC Grand*, 2017 WL 8813135, at *5 ("Courts in this district have noted that '[j]udicial policy strongly favors recognition by American courts of foreign arbitral awards.'" (alteration in original) (quoting *Karen Mar. Ltd. v. Omar Int'l, Inc.*, 322 F. Supp. 2d 224, 225 (E.D.N.Y. 2004))).

"In sum, a district court *must* enforce an arbitral award rendered abroad unless a litigant satisfies one of the seven enumerated defenses [under the New York Convention] . . . ." *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92, 106 (2d Cir. 2016). "The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention

9

applies," and "[t]he burden is a heavy one, as 'the showing required to avoid summary confirmance is high.'" *Encyclopaedia Universalis S.A.*, 403 F.3d at 90 (quoting *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 23).

## DISCUSSION

### I. Enforceability Under the New York Convention

Respondent Lavamap has thus far failed to comply with the Arbitral Award, and petitioner, therefore, seeks confirmation and enforcement of the award under the New York Convention. *See* Pet. ¶ 22; Pet.'s Mem. at 2.

As an initial matter, the applicable Agreement falls within the scope of the New York Convention for the following reasons: (1) the Agreement is a written agreement (*see* Agreement, Dkt. 13-5); (2) both the United States and Lithuania are signatories to the New York Convention and the Agreement provides for arbitration in Lithuania (*see* Pet.'s Mem. at 7; Agreement ¶ 12); (3) the subject matter of the Agreement is commercial in nature (*see generally* Agreement; *see also* Pet.'s Mem. at 7); and (4) the Agreement is not entirely domestic in scope because petitioner is a Lithuanian corporation and Lithuanian law governs the dispute between the parties (*see* Pet. ¶ 1; Agreement ¶ 12). *See Drip Cap., Inc.*, 665 F. Supp. 3d at 520; *see also Scandinavian Reinsurance Co. Ltd. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) ("The New York Convention applies in this case because [a party] is a foreign corporation."); *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 19 (finding that the New York Convention conferred federal jurisdiction where the award at issue "involv[ed] parties domiciled or having their principal place of business outside the enforcing jurisdiction").

Further, the Arbitral Award itself falls within the scope of the New York Convention. First, the Arbitral Award falls under the Convention because it arose out of a commercial legal

10

relationship between the parties governed by a commercial contract (Dkt. 13-5).  *See* Pet. ¶ 3; Pet.'s Mem. at 6–7; *see also Qing Yang Seafood*, 2022 WL 2467540, at *4; 9 U.S.C. § 202.

Second, the Arbitral Award was issued less than three years ago (*i.e.*, the Arbitrator issued the decision on April 4, 2024).  *See* Arbitral Award (Dkt. 13-6); Pet. ¶ 21; *see also* 9 U.S.C. § 207.

Third, the seven exceptions set forth in the New York Convention for denying enforcement of the Arbitral Award do not apply in this case.  Respondent was given notice of the underlying arbitration proceeding, the Petition, and the instant motion for default judgment.  *See* Arbitral Award ¶ 34 ("The Arbitral Tribunal considers that the Respondent has been duly informed of the initiated arbitration case several times by the VCCA and by the Arbitral Tribunal itself . . . ."); Dkts. 7, 13-7, 14.  Respondent, nevertheless, failed to appear in both the underlying arbitration and the instant action, and has offered no reasons why the Court should decline to enforce the award.  *See Geotech Lizenz AG v. Evergreen Sys., Inc.*, 697 F. Supp. 1248, 1252 (E.D.N.Y. 1988) ("The burden of proving that a ground for refusal of enforcement [exists] is on the party resisting enforcement."); *OOO FC Grand*, 2017 WL 8813135, at *7 (recommending confirmation of a foreign arbitration award where the respondent failed to appear in the enforcement action and the underlying arbitration and there was no factual evidence in the record to suggest that one of the exceptions to enforcement enumerated in Article V applied).

As to the merits of the Arbitral Award, having reviewed the Petition, the Arbitral Award itself, and the filings in support of petitioner's motion for default judgment, this Court finds that Flatlogic has met its burden of demonstrating that there are no genuine issues of material fact precluding confirmation of the Arbitral Award.  Specifically, petitioner has provided a copy of the underlying Agreement, as well as the Arbitrator's decision on the merits in the underlying

11

proceeding. *See Matter of Arb. Between State Enter. Rsch.-Indus. Complex "Pavlograd Chem. Plant" & Petroleum & Materials LLC*, No. 18-CV-2510, 2019 WL 1261783, at *5 (E.D.N.Y. Feb. 12, 2019) ("To enforce a foreign arbitration award, the party seeking recognition and enforcement need only provide: (a) a duly authenticated original award or an authentic copy of the award, and (b) an original or certified copy of the agreement to arbitrate."), *report and recommendation adopted sub nom. State Enter. Rsch.-Indus. Complex "Pavlograd Chem. Plant" v. Petroleum & Materials LLC*, 2019 WL 1262751 (E.D.N.Y. Mar. 19, 2019). This Court finds that, based on the preexisting record, there is more than "a barely colorable justification for the outcome reached" by the Arbitrator. *See D.H. Blair*, 462 F.3d at 110 ("Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." (quoting *Landy Michaels Realty Corp. v. Loc. 32B–32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992))).

The Arbitrator reviewed the parties' Agreement and Flatlogic's submission, including communications between the parties, and issued a 17-page decision addressing each of petitioner's claims on the merits. *See generally* Arbitral Award; *see id.* ¶ 35 ("The Arbitral Tribunal has given careful consideration to the factual and legal arguments presented by the Claimant in its written submissions."). The Arbitrator found that petitioner had made a good-faith effort to resolve the dispute and that, therefore, the parties had exhausted all possibilities to resolve the dispute amicably. *Id.* ¶ 18. The Arbitrator further noted that respondent had "failed to present his position to the case at hand, notwithstanding the fact that he was duly informed about the initiated arbitral proceedings." *Id.* ¶ 4; *see also id.* ¶¶ 21–23; 28; 33–34. The Arbitrator found that the parties had entered into a valid commercial agreement and that petitioner had performed its duties under the Agreement, as evidenced by the weekly reports that

petitioner sent to respondent pursuant to the Agreement. *See id.* ¶¶ 36, 38. The Arbitrator also found that respondent "delayed the payment under the invoices" and "many times . . . acknowledged his debt."[11]  *Id.* ¶ 39.

Respondent, for its part, has failed to provide any contrary recitation of the facts, put forward any defense, or otherwise appear in the underlying arbitration proceeding or this action. *See* Pet.'s Mem. at 8; *Encyclopaedia Universalis S.A.*, 403 F.3d at 90 (noting that "[t]he party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies," and that "[t]he burden is a heavy one"). This Court, therefore, finds that there is no genuine dispute as to any material fact and recommends confirming the Arbitral Award and entering judgment as a matter of law against respondent.

## II. Amount of Default Judgment Award

Petitioner seeks to confirm the Arbitral Award and the assessment of $76,180.11 in damages for the balance owed under the Agreement and EUR 10.630,16[12] in legal fees and arbitration costs. *See* Arbitral Award ¶ 72.

"The custom in U.S. courts is to convert any arbitration award issued in foreign currency to U.S. dollars." *Qing Yang Seafood*, 2022 WL 2467540, at *4. "Although courts in this Circuit have taken different approaches in converting foreign currency awards into judgments, courts in diversity have generally applied New York Judiciary Law § 27(b), which uses 'the rate of exchange prevailing on the date of entry of the judgment . . . .'" *High Hope Zhongtian Corp. v. Peking Linen Inc.*, No. 22-CV-7568, 2024 WL 1911116, at *4 (S.D.N.Y. Apr. 15, 2024) (quoting

---

[11] The Arbitrator noted that from August 2022 through November 2022, respondent paid petitioner a total amount of $27,500. Arbitral Award ¶ 43.

[12] According to petitioner, EUR 10.630,16 equals $11,468.35. *See* Pet ¶ 21 n.5; Pet.'s Mem. at 6 n.5.

13

*Qing Yang Seafood*, 2022 WL 2467540, at *5), *report and recommendation adopted*, 2024 WL 1908436 (S.D.N.Y. May 1, 2024).

Here, petitioner requests that the Court enter judgment in its favor in the amount of $87,648.46, including $11,468.35 for the legal fees and arbitration costs awarded ($76,180.11 + $11,468.35 = $87,648.46). *See* Dkt. 13-1 ("Proposed Order of Default J."), Pet. ¶ 21 n.5; Pet.'s Mem. at 6 n.5.

The Court recommends granting petitioner's request to enforce the Arbitral Award and granting petitioner $76,180.11 in damages for the balance owed under the Agreement and EUR 10.630,16 (not $11,468.35 USD[13]) in legal fees and arbitration costs. The Court finds that the Arbitrator provided sufficient "colorable justification" for awarding these amounts. See *Qing Yang Seafood*, 2022 WL 2467540, at *6. Specifically, the Arbitrator found that Lavamap owed Flatlogic a balance of $76,341.16 under the Agreement, but that Flatlogic had opted not to seek reimbursement of $161.05 for services set forth in invoice "ADV No. 000452." *See* Arbitral Award ¶¶ 54–57; Pet. ¶ 21 n.4. The Arbitrator, therefore, awarded Flatlogic $76,180.11 in damages and reduced the amount of legal fees and costs proportionally pursuant to Article 7(4) of the Arbitration Rules. *See* Arbitral Award ¶¶ 67–68.

### III.   Post-judgment Interest[14]

Petitioner requests that the Court award "post-judgment interest at the current legal rate

---

[13] Petitioner does not reference the conversion rate it used when converting the award of legal fees and arbitration costs of EUR 10.630,16, nor the date the conversion rate was applied. *See* Pet ¶ 21 n.5; Pet.'s Mem. at 6 n.5. This Court, therefore, recommends applying New York Judiciary Law § 27(b) and converting the award for legal fees and arbitration costs (*i.e.*, EUR 10.630,16) to U.S. dollars at the exchange rate reported by the Federal Reserve at the time that judgment is entered. *See High Hope Zhongtian Corp.*, 2024 WL 1911116, at *4.

[14] The Arbitrator awarded petitioner "procedural annual interest amounting to [six] percent on the awarded amount from the date of initiation of [the] arbitration proceedings, *i.e.* December 12, 2023, until the arbitral award is fully executed." Arbitral Award ¶ 72. Although "[p]rejudgment

14

allowed and accruing, pursuant to 28 U.S.C. § 1961, as of the date of th[e] Default Judgment until the date of its satisfaction." *See* Proposed Order of Default J.  "Awards of post-judgment interest under § 1961 are mandatory[,]" and "§ 1961 applies to actions to confirm arbitration." *Albtelecom SH.A v. UNIFI Commc'ns, Inc.*, No. 16-CV-9001, 2021 WL 1089982, at *5 (S.D.N.Y. Mar. 22, 2021).  This Court recommends awarding post-judgment interest, calculated at the statutory rate prescribed by 28 U.S.C. § 1961, and accruing from the date judgment is entered until the judgment is satisfied.  *See id.*

## CONCLUSION

For the foregoing reasons, and given the substantial deference to which foreign arbitration awards are entitled, this Court respectfully recommends granting petitioner's motion for default judgment.  This Court, therefore, recommends entering judgment in favor of Flatlogic in the amount of **$76,180.11** and awarding Flatlogic **EUR 10.630,16** in legal fees and arbitration costs, the latter to be converted to U.S. currency on the date judgment is entered.  *See Qing Yang Seafood*, 2022 WL 2467540, at *7.  This Court also recommends awarding petitioner post-judgment interest pursuant to 28 U.S.C. § 1961(a) to accrue from the date judgment is entered until the judgment is satisfied.

A copy of this Report and Recommendation is being electronically served on counsel. Further, this Court directs petitioner's counsel to serve a copy of this Report and

---

interest is available in actions brought under the New York Convention," *High Hope Zhongtian Corp.*, 2024 WL 1911116, at *4 (citing *Waterside Ocean Nav. Co. v. Int'l Nav. Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984)), petitioner makes no request for prejudgment interest in the instant motion for default judgment.  *See* Proposed Order of Default J.; Pet.'s Mem. at 9 (seeking judgment in the amount of $87,648.46).  Thus, this Court only considers petitioner's request for post-judgment interest.  *See* Proposed Order of Default J. (requesting "post-judgment interest at the current legal rate allowed and accruing, pursuant to 28 U.S.C. § 1961, as of the date of th[e] Default Judgment until the date of its satisfaction").

Recommendation on Lavamap by overnight mail and first-class mail at Lavamap's registered business address and to any applicable email address for Lavamap in connection with this action (*e.g.,* jordan@lavamap.com), and to file proof of service on ECF by August 4, 2025.

Any objections to the recommendations made in this Report must be filed with the Honorable Hector Gonzalez within 14 days after the filing of this Report and Recommendation and, in any event, on or before August 13, 2025.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) (discussing waiver under the former ten-day limit).

**SO ORDERED**

Dated:  Brooklyn, New York
July 30, 2025

s/ James R. Cho
James R. Cho
United States Magistrate Judge
